**Morris JONES and Pamela Brown, Appellants/Cross–Respondents,**

**v.**

**MID–CENTURY INSURANCE CO., Respondent/Cross–Appellant.**

No. SC 89844.

Supreme Court of Missouri, En Banc.

June 30, 2009.

Phillip J. Barkett, Jr., Cook, Barkett, Maguire & Ponder, L.C., Cape Girardeau, MO, for Appellants/Cross-Respondents.

William Sneckenberg, Matthew L. McBride, Sneckenberg, Thompson & Brody, LLP, Chicago, IL, Jeffrey P. Hine, Osburn, Hine, Kuntze, Yates & Murphy, L.L.C., Cape Girardeau, MO, for Respondent/Cross-Appellant.

LAURA DENVIR STITH, Chief Justice.

Morris Jones and Pamela Brown ("plaintiffs") sued Mid–Century Insurance Company ("Mid–Century") seeking $100,000 in underinsured motorist coverage for each of them under their Mid–Century insurance policy. The trial court held that each was entitled to only $50,000 in coverage under the Mid–Century policy because it unambiguously permitted Mid–Century to reduce the $100,000 coverage its policy purported to provide per person by the $50,000 each plaintiff already had received from the underinsured tortfeasor. This Court reverses and remands.

■ Even were Mid–Century correct that one provision of the policy, considered in isolation, could be read to permit this reduction in coverage, two other provisions of the policy state that coverage will be provided up to the full amount of the policy. The Court effectively would have to rewrite these provisions to adopt Mid–Century's argument. This it will not do. Missouri law is well-settled that where one provision of a policy appears to grant coverage and another to take it away, an ambiguity exists that will be resolved in favor of coverage. This is particularly true where, as here, Mid–Century's interpretation of the policy language would mean that it never actually would be required to pay its insureds the full amount of underinsured motorist coverage its policy ostensibly provides. Such a result is not permitted under Missouri law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 7, 2004, Morris Jones was driving a 2001 Dodge Ram pickup truck that was struck by a vehicle driven by Sarah McGee. Pamela Brown was a passenger in Mr. Jones' vehicle at the time of the accident. The parties stipulate that Mr. Jones and Ms. Brown each suffered in excess of $150,000 in total damages as a result of the accident. Ms. McGee's insurer at the time, American Family Insurance Company, provided a policy with liability limits of $50,000 per person and $100,000 per occurrence and paid the policy limits of $50,000 to Mr. Jones and $50,000 to Ms. Brown.

The plaintiffs also were insured under an insurance policy for a 1992 Lincoln Town Car, issued by Mid–Century, which was in full force and effect on the date of the accident. The Mid–Century policy contained an underinsured motorist provision that provided coverage in the amount of $100,000 per person and $300,000 per occurrence subject to certain policy limitations. The plaintiffs each filed claims seeking coverage up to the $100,000 limit provided in the "Underinsured Motorist Coverage" ("UIM") provision in their Mid–Century policy.

Although the declarations page of Mid–Century's policy says it provides $100,000 in underinsured motorist coverage per person and $300,000 per accident, Mid–Century claimed below, and claims in this Court, that it is only liable for $50,000 to each of the plaintiffs because subsection (f) of its policy allows it to deduct from its coverage any amounts the insureds receive from the tortfeasor, even though this is concededly insufficient to meet plaintiffs' damages. Mid–Century paid each plaintiff only $50,000 in underinsured motorist coverage, with the understanding that each plaintiff reserved his or her right to file this lawsuit

seeking the additional $50,000 each believes is due under the policy.

The trial court entered judgment in favor of Mid–Century, finding the policy unambiguously reduced the amount identified as the coverage amount per person—$100,000—by the amount already received by each plaintiff—$50,000. Plaintiffs appeal. Following a decision by the Missouri Court of Appeals, Southern District, this Court granted transfer. **Mo. Const. art. V, sec. 10.**

## II. STANDARD OF REVIEW

■ "The interpretation of an insurance policy is a question of law that this Court determines *de novo.*" *Seeck v. Geico General Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007). "In construing the terms of an insurance policy, this Court applies 'the meaning which would be attached by an ordinary person of average understanding if purchasing insurance,' and resolves ambiguities in favor of the insured." *Id.; Martin v. United States Fid. & Guar. Co.,* 996 S.W.2d 506, 508 (Mo. banc 1999).

## III. AMBIGUITY OF THE MID–CENTURY POLICY

■ The determinative issue on appeal is whether the Mid–Century policy is ambiguous. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck,* 212 S.W.3d at 132. Moreover, "[i]f a contract promises something at one point and takes it away at another, there is an ambiguity." *Id.* at 133. Absent an ambiguity, an insurance policy must be enforced according to its terms. *Rodriguez v. General Accident Ins. Co.,* 808 S.W.2d 379, 382 (Mo. banc 1991). If, however, "policy language is ambiguous, it

must be construed against the insurer." *Seeck,* 212 S.W.3d at 132.

The critical portions of the Mid–Century policy state as follows:

**Limit of Liability**

a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of UNDERinsured Motorist Coverage stated in the policy, and *the most we will pay* will be the lesser of:

1. The difference between the amount of an insured person's damages for bodily injury, and the amount paid to that insured person by or for any person or organization who is or may be held legally liable for the bodily injury; or

2. *The limits of liability of this coverage*

b. Subject to subsections a. and c.—h. in this Limits of Liability section, *we will pay up to the limits of liability shown in the schedule below as shown in the Declarations.*

| Coverage Designation | Limits (each person / each occurrence) |
|---|---|
| U9 | 100/300 |

f. The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by any amount paid or payable to or for an insured person;

i. by or for any person or organization who is or may held legally liable for the bodily injury to an insured person; or

ii. for bodily injury under the liability coverage of this policy....

(emphasis added).

■ "Limit of Liability" (a) of the Mid–Century policy expressly states that "the most it will pay" is the lesser of the $100,000 per person policy limit or the difference between the damages and the payments already made. A reasonable construction of this language is that the

insurer will pay the full policy limits of $100,000 per person if that is the lesser of the two damage amounts listed. This is also what "Limit of Liability" (b) states, for it says that the insurer "will pay up to the limits of liability shown in the schedule" and on the declarations page, which the policy specifically recites is $100,000 per person.

Here, the parties stipulated that each plaintiff suffered at least $150,000 in damages and that the negligent driver's insurer paid each plaintiff $50,000, leaving each with at least $100,000 in damages unpaid. The declarations page for the policy and subsection (b) above both state that *coverage* is provided up to $100,000. Under either subsection (a) or (b), therefore, Mid–Century would be obligated to pay each plaintiff $100,000, and the total amount of liability would be $100,000.

Mid–Century says, however, that under subsection (f), it is entitled to reduce the coverage it sets out on the declarations page by the amount already paid to the insured ("The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by any amount paid or payable to or for an insured person . . ."). In this case, because each plaintiff already received $50,000, that amount must be deducted from the $100,000 in coverage provided in the policy, Mid–Century says, to determine the amount payable—in this case, $50,000.

■ Such a construction of subsection (f) is, at best, in conflict with the clear intent of subsections (a) and (b), and is, at worst, misleading. To avoid this conflict, one impliedly would have to insert additional words into subsection (a)(2) and interpret it as if it read as follows:

**Limit of Liability**

a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of UNDERinsured Motorist Coverage stated in the policy, and the most we will pay will be the lesser of:

1. The difference between the amount of an insured person's damages for bodily injury, and the amount paid to that insured person by or for any person or organization who is or may be held legally liable for the bodily injury; or

2. *The limits of liability of this coverage minus the amount already paid to that insured person.*

(new language underlined and in bold italics). This Court does not rewrite insurance policies to add language.[1] Subsection (f) cannot be construed to mean that any amount paid to the insured must be deducted from the coverage limit, for such an interpretation in effect would add language to subsection (a)(2) that is not there.

1. See, e.g., *Capitol Indem. Corp. v. Callis,* 963 S.W.2d 247, 249 (Mo.App.1997) ("If a court finds that the language of an insurance policy is ambiguous, 'the interpretation which is most favorable to the insured is adopted.' '[This] principle, however, does not authorize courts, under the guise of interpretation or construction, to alter or rewrite a policy' "); *Henderson v. Massachusetts Bonding & Ins. Co.,* 337 Mo. 1, 84 S.W.2d 922, 924–925 (1935) (The Court specifically acknowledged that its function is to construe insurance contracts, not make them, and that when a contract contains language that is ambiguous, it must be construed strictly against the insurer because the insurer is responsible for "stating the terms of any provision so clearly, definitely, and specifically as to make its meaning so plain that no room is left for construction"); *U.S. Fidelity & Guar. Co. v. Hill,* 722 S.W.2d 609, 611 (Mo.App.1986) (Court refused to rewrite a policy and to add provisions that were not in the original policy, stating that rewriting of a contract "is beyond the power of courts in this state").

While subsection (b) does state that it is "[s]ubject to subsections a. and c.—h. in this Limits of Liability section," and, arguably, is limited by subsection (f)'s language, subsection (a) has no similar reference to subsection (f), indicating it is not so limited. In addition, this Court notes that Mid–Century's interpretation of subsection (f) also would make inaccurate and misleading subsection (b)'s statement that it *"will pay up to the limits of liability shown in the schedule below as shown in the Declarations"*—that is, that it will pay up to $100,000. This is so because Mid–Century never would be called on to pay its total limit of liability shown on the schedule if it were entitled first to deduct any amounts received from the tortfeasor, for in the case of *underinsured* motorist coverage, *some* amount *always* will have been received from the tortfeasor—that is why the insured is seeking to collect *under* insured rather than *un* insured motorist coverage.[2]

If subsection (f) could not be reconciled with subsections (a) and (b), then these contract provisions would be found to be ambiguous, for as previously noted, it is well-settled that where one section of an insurance contract promises coverage and another takes it away, the contract is ambiguous. *Seeck*, 212 S.W.3d at 133. "Conflicting clauses in a policy should be reconciled so far as their language reasonably permits; when reconciliation fails, however, inconsistent provisions will be construed in favor of the insured." *Lutsky v. Blue Cross Hospital Servs., Inc. of Missouri*, 695 S.W.2d 870, 875 n. 7 (Mo. banc 1985). Subsection (f), if interpreted as proposed by Mid–Century, would take from the insured a substantial part of the benefit for which the insured contracted and would be in conflict with the clear language of subsections (a) and (b) of the "Limits of Liability" section of the policy. This Court, therefore, rejects Mid–Century's interpretation of subsection (f).[3]

2. This anomalous result always would occur, for underinsurance coverage never can be invoked unless the insured already has recovered something from the tortfeasor—if the insured had recovered nothing from the tortfeasor, then the insured would be entitled to uninsured motorist coverage of at least the statutory minimum amount—$25,000 in Missouri. Sec. 303.030, RSMo Supp.2004. There will always be an amount, therefore, that must be deducted from the limits of liability of coverage even where those limits are equal to or less than the damages still remaining uncompensated, as is the case here. Were an insured to suffer, for example, $225,000 in total damages, Mid–Century still would be liable only up to $75,000. This is because, under its interpretation of subsection (f), it always would pay only the lesser of the difference between the damages suffered and what the amount already recovered or the liability limit set in the policy, or $100,000, minus at least the amount of minimum coverage of $25,000, and minus even more if the insured had some coverage.

3. While Mid–Century says a contrary result was reached in *Rodriguez v. General Accident*

*Ins. Company of America*, 808 S.W.2d 379 (Mo. banc 1991), there was no underinsurance in that case, and its subsequent discussion of how to interpret underinsured motorist coverage was mere dicta. In any event, the two cases are not in conflict. The relevant language of the set-off in *Rodriguez* provided that "the limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." *Id.* at 381. The *Rodriguez* dicta said only that the fact that an insurer will not be called on to pay the full coverage amount listed does not make a particular limitation inherently unenforceable where the policy was clear that any prior payments would be deducted from the coverage amount. *Rodriguez* did not give an insurer license to make contrary-to-fact statements about the coverage it provides in a policy. Here, by contrast, the policy expressly states that total coverage will be $100,000, whereas in fact, were Mid–Century's interpretation to be accepted, $100,000 in coverage never would be provided, because in every situation, the $100,000 limit would be reduced further reduced by $25,000, the statu-

Here, however, an alternative interpretation of subsection (f) does exist, and it gives meaning to all subsections of the coverage provisions. In stating that "[t]he amount of UNDERinsured Motorist Coverage we will pay shall be reduced by any amount paid or payable to or for an insured person" subsection (f) simply means that in determining the total damages to which the underinsured motorist coverage will be applied, the amount of money already received from the tortfeasor must be deducted. In this way, it avoids a double recovery. So, for instance, if the plaintiffs here had suffered only $125,000 in damages, and had received $50,000 from the tortfeasor, then the $50,000 received would be deducted from the total of $125,000 in damages and the underinsured motorist coverage would supply the remaining $75,000. It is not intended that the $50,000 already paid be deducted a second time, however, as would be the effective result of Mid–Century's argument.

## IV. CONCLUSION

For all of the reasons stated above, the circuit court's judgment is reversed, and the case is remanded.

All concur.

tory minimum amount of liability coverage required in Missouri. This Court, therefore, need not reach the issue whether the *dicta* in *Rodriguez* accurately states Missouri law, for it is not applicable here.