Jason L. RICE, Respondent,

v.

SHELTER MUTUAL INSURANCE
COMPANY, Appellant.

No. SC 90139.

Supreme Court of Missouri,
En Banc.

Dec. 8, 2009.

Rehearing Denied Jan. 26, 2010.

Ben T. Schmitt, Lesley Renfro Willson, Schmitt Manz Swanson & Mulhern, Kansas City, MO, for Appellant.

Kirk Rahm, Gayle McVay, Rahm, Rahm & McVay, P.C., Warrenburg, MO, Ed Dougherty, Dougherty, Modin & Holloway, Kansas City, MO, for Respondent.

Leland F. Dempsey, Ashley L. Baird, Dempsey & Kingsland, P.C., Kansas City, MO, for Amicus Curiae.

ZEL M. FISCHER, Judge.

Shelter Mutual Insurance Company appeals the trial court's entry of summary judgment in favor of Jason Rice in the amount of $525,000 in uninsured motorist coverage under his Shelter policy. (Shelter paid Rice $75,000 prior to this action.) This Court determines that the policy is ambiguous; therefore, under settled Missouri law, the ambiguity must be resolved in favor of coverage for the insured. Judgment affirmed.

## I. BACKGROUND

Jason Rice was injured on the job while a passenger in a truck driven by Daniel Patterson on Highway 13 in Johnson County. Judy Saimon crossed the centerline, collided with the truck, causing it to overturn and become engulfed in flames. Rice and Patterson suffered burn injuries as a result of the collision. At the time of the accident, Saimon was operating an uninsured motor vehicle.

Prior to the collision, Shelter Mutual Insurance Company issued three automobile insurance policies to Michael and Connie Rice, Jason's parents. Jason Rice was insured within the meaning of the uninsured motorist coverage of the three policies, and the policies were in full force and effect on the date of the accident. The first policy provided coverage of $100,000 per person/$300,000 per accident. The second and third policies provided coverage of $250,000 per person/$500,000 per accident.

The three policies contained the following language:

Part IV—UNINSURED MOTORISTS

COVERAGE E—UNINSURED MOTORISTS

. . .

INSURING AGREEMENT FOR COVERAGE E

Subject to the limit of our liability stated in this Coverage, we will pay damages for bodily injury sustained by an insured which that insured, or that insured's legal representative, is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership or use of the uninsured motorist vehicle.

. . .

Coverage E does not apply:

. . .

(3) To damages sustained by any insured if benefits are:

(a) payable to, or on behalf of, such insured under any compensation law,[1] as a result of the same accident, or

(b) required by any compensation law to be provided to, or on behalf of, such insured as a result of the same accident.

This exclusion does not apply to the amounts of coverage mandated by any uninsured motorist insurance law or financial responsibility law applicable to the accident, but does apply to any amounts exceeding that mandate, and to coverages which are not mandated by such laws.

. . .

## EFFECT OF UNINSURED MOTORIST INSURANCE LAWS OR FINANCIAL RESPONSIBILITY LAWS

If an applicable uninsured motorist insurance law or financial responsibility law renders any provision of this Part of the policy unenforceable, we will provide only the minimum limits mandated by such law. However, if other insurance covers an insured's claim and provides those required minimum limits, the provisions of this policy are fully enforceable.

All provisions of this Part of the policy which exceed the requirements of any applicable uninsured motorist insurance law or financial responsibility law, or are not governed by it, are fully enforceable.

As a result of the collision and injuries Jason Rice sustained, benefits were paid to him pursuant to a workers' compensation claim, which is a "compensation law" as defined in the Shelter policies. On March 16, 2007, Rice, through his attorney, submitted a demand to Shelter for payment of the per person limits of all three policies, totaling $600,000. On April 18, 2007, Shelter declined to pay $600,000, relying on the exclusion language of the uninsured motorist coverage of the three policies. Instead, Shelter offered and paid $25,000 per policy, totaling $75,000 for the three policies, because the policies purported to reduce uninsured motorist coverage to the statutorily mandated minimum under section 379.203.[2] Shortly thereafter, Rice filed a claim against Shelter seeking the additional $525,000 plus the prejudgment interest. The trial court granted Rice's motion for summary judgment and awarded him $525,000 plus $34,952.05 in interest, finding as follows:

In construing the EXCLUSIONS section of Coverage E, including the definition of Compensation Law, the Court takes the words and phrases in their

---

**1.** The definitions section of the policy provides:

Compensation law means any law under which benefits are paid to a person as compensation for the effects of bodily injury, without regard to fault, because of that person's status as an employee or beneficiary. It includes, but is not limited to, workers' compensation laws, disability laws, the Federal Employers' liability Act and the Jones Act.

**2.** All statutory citations are to RSMo 2000.

plain, ordinary meaning, except as specifically defined within the policy. *Farmland Industries, Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. banc 1997).

The exclusionary language provides that if the insured receives benefits for bodily injury from any insurance source, including worker's compensation benefits, FELA benefits, Medicare, Medicaid, Social Security, VA benefits, or even health insurance benefits, the insured is not entitled to uninsured benefits under Coverage E. If all the overlapping exclusionary language contained in the policies is given meaning, then the insured received no perceivable value for the premiums paid for uninsured motorist coverage; and the appearance and reasonable expectation of having purchased Six Hundred Thousand Dollars of uninsured motorist coverage would be illusory. In *Cano v. Travelers Ins. Co.,* 656 S.W.2d 266 (Mo. banc 1983), the Missouri Supreme Court not only held that language in an uninsured motorist policy that purported to reduce the insurer's liability because of the receipt of workers' compensation benefits violated public policy, and the provisions of Mo.Rev. Stat. § 579.203, but also that "[a] construction which may render a portion of the policy illusory should not be indulged in." *Cano* at 271. The exclusionary language of coverage E in the Shelter policies is so excessively broad as to be void and contrary to the public policy of Missouri.

In finding that the exclusionary language regarding uninsured motorist coverage was so excessively broad as to be void and contrary to the public policy of Missouri, the trial court did not reach the issue of whether the policy was also ambiguous, which was pled as an additional basis to grant the summary judgment motion in favor of Rice. Following a decision by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

## II. STANDARD OF REVIEW

 This Court reviews the trial court's granting of summary judgment *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The interpretation of an insurance policy is a question of law that this Court also determines *de novo. Jones v. Mid–Century Ins. Co.,* 287 S.W.3d 687, 690 (Mo. banc 2009). Because this Court's review is *de novo,* if the trial court's judgment can be sustained on any ground as a matter of law, even if different than the one posited in the order granting summary judgment, it should be affirmed. *ITT Commercial Fin.,* 854 S.W.2d at 387–88. In construing the terms of an insurance policy, this Court applies the meaning that would be attached by an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured. *Jones,* 287 S.W.3d at 690 (citing *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007) and *Martin v. United States Fid. & Guar. Co.,* 996 S.W.2d 506, 508 (Mo. banc 1999)).

## III. ANALYSIS

 Missouri requires the presence of uninsured motorist coverage in the minimum amount of $25,000 per person/$50,000 per occurrence but allows citizens to purchase coverage above that minimum. Section 379.203.1. The purpose of section 379.203 is to establish a minimum level of protection equivalent to the liability coverage the insured would have received had the insured been involved in an accident with an insured tortfeasor. *Kuda v. Am. Family Mut. Ins. Co.,* 790 S.W.2d 464, 467 (Mo. banc 1990).

In this case, the Rices bought three separate policies from Shelter. Jason was insured under each policy purchased. The Rices paid a separate premium for each policy. The premiums paid on all three Shelter policies provided coverage limits in excess of those required by law. The obvious purpose was to provide the Rices protection above the statutory minimum of $25,000 in the event they were injured by negligent operation of an uninsured motor vehicle. Therefore, the analysis begins with the expectation of an ordinary customer who paid premiums for uninsured motorist coverage in excess of the statutory minimum so the customer would be covered to the extent of the coverage purchased. Nevertheless, to determine whether this expectation was reasonable, the law requires a review of the policy language.[3]

■ It is settled law that "when analyzing an insurance contract, the entire policy and not just isolated provisions or clauses must be considered." *Versaw v. Versaw*, 202 S.W.3d 638, 643 (Mo.App. 2006) (citing *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998)). "If an entire policy is analyzed in context and found to be unambiguous, i.e., its language is plain, straightforward, and susceptible of only one meaning, the rules of construction are inapplicable, and absent public policy to the contrary, the contract will be enforced as written." *Id.* (citing *Krombach v. Mayflower Ins. Co. Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992)).

■ "Different rules attend if provisions of an insurance policy (when read in the context of the policy as a whole) are ambiguous, i.e., there is duplicity, indistinctness, or uncertainty in its meaning, and the policy is therefore open to different constructions. If ambiguity exists, the policy 'will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy.' " *Id.* Ambiguous policy language must be construed against the insurer. *Krombach*, 827 S.W.2d at 210. "This rule is especially applicable where insurance is first 'granted' and is then followed by provisions limiting or avoiding liability." *Versaw*, 202 S.W.3d at 643.

■ Shelter's policy contains inconsistent provisions—one guaranteeing coverage above the minimum coverage mandated by statute and another limiting coverage to the minimum amount mandated by section 379.203. In limiting Rice's compensation to $75,000, Shelter relied on the exclusionary language that states:

Coverage E does not apply:

. . .

(3) To damages sustained by any insured if benefits are:

(a) payable to, or on behalf of, such insured under any compensation law, as a result of the same accident, or

(b) required by any compensation law to be provided to, or on behalf of, such insured as a result of the same accident.

---

**3.** Rice and amicus curiae urge this Court to find that the public policy as stated in the statutes referenced in this opinion and the prior case decisions always provide the insured with the entire amount of uninsured motorist coverage purchased, not merely the statutory minimum, regardless of any exclusionary provisions. Because this case is resolved on the basis of well-settled law that ambiguous policy language is construed in favor of providing coverage, this Court does not address the trial court's finding that the exclusionary language was so excessively broad as to render the uninsured motorist coverage illusory, void and against public policy.

This exclusion does not apply to the amounts of coverage mandated by any uninsured motorist insurance law or financial responsibility law applicable to the accident, *but does apply to any amounts exceeding that mandate,* and to coverages which are not mandated by such laws.

(emphasis added).

This section is immediately followed by a section that discusses the effect (if any) of uninsured motorist insurance laws or financial responsibility laws. This provision incongruously purports to grant coverage for any amount exceeding the minimum required by uninsured motorist statutes:

### EFFECT OF UNINSURED MOTORSIT INSURANCE LAWS OR FINANCIAL RESPONSIBILITY LAWS

*If an applicable uninsured motorist insurance law or financial responsibility law renders any provision of this Part of the policy unenforceable, we will provide only the minimum limits mandated by such law.* However, if other insurance covers an insured's claim and provides those required minimum limits, the provisions of this policy are fully enforceable.

*All provisions of this Part of the policy which exceed the requirements of any applicable uninsured motorist insurance law or financial responsibility law,* or are not governed by it, *are fully enforceable.*

(emphasis added).

In this case, therefore, the uninsured motorist provision starts with a reference to providing coverage up to the limit of liability in the declaration provisions, followed by provisions to exclude coverage if any benefits are provided to an insured under any compensation law, followed by provisions that provide this exclusion does not apply to amounts of coverage mandat-

ed by any uninsured motorist law, followed by provisions that provide "the [uninsured motorist part] of the policy which exceed[s] the requirements of any applicable uninsured motorist insurance law or financial responsibility law, or are not governed by it, are fully enforceable."

 These provisions are entirely inconsistent and cannot be reconciled. The policy expressly limits coverage to the statutory minimum and yet purports to grant full coverage to all provisions that exceed the statutory minimums. "Missouri law is well-settled that where one provision of a policy appears to grant coverage and another to take it away, an ambiguity exists that will be resolved in favor of coverage." *Jones,* 287 S.W.3d at 689.

This Court recently dealt with ambiguity in an insurance contract in *Seeck.* Seeck sought coverage under an "excess" or "other" insurance clause that stated, "When an insured is occupying a motor vehicle not owned by the insured ... this insurance is excess over any other insurance available to the insured and the insurance which applies to the occupied motor vehicle is primary." *Seeck,* 212 S.W.3d at 132. The insurer argued that Seeck's recovery was limited by a limit of liability clause that reduced the amounts paid to the insured by those paid or payable by the party at fault for the accident. *Id.* at 132–33. This Court, applying the reasoning of several court of appeals cases with similar facts, held that "[w]here, as here, an other insurance clause appears to provide coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous, and the ambiguity will be resolved in favor of coverage for the insured." *Id.* at 134.

Shortly after *Seeck* was decided, this Court in *Jones* again dealt with the issue

of ambiguity in underinsured motorist provisions of insurance policies. In *Jones,* this Court examined a policy with apparently inconsistent provisions to determine if an ambiguity existed. 287 S.W.3d at 690. The policy contained several provisions purporting to grant underinsured motorist coverage up to $100,000 and one provision limiting liability. *Id.* The insurer claimed that the limit of liability provision allowed it to subtract money paid or payable to the insured by the tortfeasor from the $100,000 limit. *Id.* at 691. This Court noted that the insurer's interpretation of the limit of liability provision would render the other provisions guaranteeing $100,000 of coverage "inaccurate and misleading." *Id.* at 692. This Court rejected the insurer's interpretation of the limiting provision and instead held that the provision allowed the insurer to subtract the amount of money paid or payable by the tortfeasor from the total damages, not $100,000, thereby reconciling the provision with the rest of the policy. *Id.* at 693.

Shelter's policy is analogous to the inconsistent provisions at issue in *Jones* and *Seeck* because it is grants coverage in one provision and limits it in another. Even though *Jones* and *Seeck* deal with underinsured motorist provisions and excess or other insurance clauses, not uninsured motorist provisions as in this case, they are illustrative and confirm well-settled Missouri law that inconsistent and irreconcilable provisions in an insurance policy create an ambiguity that will be resolved in favor of the insured. *See Lutsky v. Blue Cross Hosp. Serv., Inc.,* 695 S.W.2d 870, 875 (Mo. banc 1985); *Heald v. Aetna Life Ins. Co.,* 340 Mo. 1143, 104 S.W.2d 379, 382 (1937); *Drucker v. W. Indem. Co.,* 204 Mo.App. 516, 223 S.W. 989, 991–92 (1920).

## IV. CONCLUSION

Accordingly, the policy is ambiguous, and Rice is entitled to the full coverage in the amount of $600,000. Therefore, the trial court's judgment is affirmed.

All concur.