**SHELTER MUTUAL INSURANCE CO., Appellant,**

v.

**Loyd STRAW, Respondent.**

**No. SD 30339.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 25, 2011.

Application for Transfer to Supreme Court Denied Feb. 15, 2011.

Application for Transfer Denied April 26, 2011.

---

Michael J. Patton, Springfield, MO, for Appellant.

Roger Johnson, Joplin, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Shelter Mutual Insurance Company ("Shelter") brought a declaratory judgment action against Loyd Straw ("Straw") to determine the amount of underinsured motorist ("UIM") coverage available for payment to Straw following his injuries in a motor vehicle collision. The trial court granted Straw's motion for summary judgment in the amount of $100,000, and denied Shelter's motion for summary judgment. This appeal followed. We reverse the judgment of the trial court and enter judgment in favor of Shelter on its motion for summary judgment.

## Facts and Procedural History

Straw was involved in an automobile collision with Paula Heiskell ("Heiskell") on December 14, 2007. Heiskell was negligent in causing the collision and Straw was without any comparative fault.

At the time of the collision, Heiskell was insured under a policy issued by Farmers Insurance Group ("Farmers") that provided liability coverage of $100,000. Farmers paid $100,000 on behalf of Heiskell to Straw for the damages and bodily injuries Straw suffered by reason of the collision. Straw had an insurance policy with Shelter which included UIM coverage.

On February 11, 2009, Shelter filed a "Petition for Declaratory Judgment" in the Circuit Court of Jasper County, Missouri. The only legal issue presented by the pleadings was whether Shelter's "MISSOURI UNDERINSURED MOTORIST ENDORSEMENT" provided any UIM coverage to Straw for the collision that occurred on December 14, 2007.

On March 25, 2009, the parties filed a "Joint Stipulation of Facts" and agreed to submit the legal issues to the trial court through separate motions for summary judgment. The parties stipulated that only two results could be reached by the trial court with respect to the Shelter policy. Those results were: (1) the Shelter policy provided no coverage to Straw; or (2) the Shelter policy provided coverage to Straw in the amount of $100,000. The Joint Stipulation of Facts included: "the value of [Straw's] damages for bodily injury as it relates to his claim against [Heiskell] is equal to or exceeds $200,000."

On November 9, 2009, the trial court sustained Straw's motion for summary judgment and found Shelter owed Straw the UIM coverage limits of $100,000. The trial court found "[a] layperson's reasonable interpretation of the Shelter policy would be that any offset would come from the insured's amount of total damages and not the policy limits." Shelter appeals this judgment.

Shelter contends that the "LIMITS OF OUR LIABILITY" [1] provision of their policy includes a set-off provision which permits it to reduce its coverage by the amount Heiskell, the responsible tortfeasor, paid to Straw. Straw contends Shelter must pay the full $100,000 of coverage under the underinsured portion of the policy. The determinative issue here is whether the set-off provision in the Shelter policy is ambiguous, which would require payment of the $100,000 in UIM coverage.

## Standard of Review

We review a grant of summary judgment on a *de novo* basis and view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993); *Ameri-*

---

1. Certain words in Shelter's policy appear in **bold** type. Our references to quoted portions of the policy include the words in **bold** type as they appear.

can *Std. Ins. Co. v. Hargrave,* 34 S.W.3d 88, 89 (Mo. banc 2000). Summary judgment will be upheld on appeal if there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. *ITT Commercial Fin.,* 854 S.W.2d at 377.

▮ The interpretation of an insurance policy is a question of law that this Court also determines *de novo. Jones v. Mid–Century Insurance Co.,* 287 S.W.3d 687, 690 (Mo. banc 2009); *Ritchie v. Allied Property & Casualty Ins. Co.,* 307 S.W.3d 132 (Mo. banc 2009). " 'In construing the terms of an insurance policy, this Court applies 'the meaning which would be attached by an ordinary person of average understanding if purchasing insurance,' and resolves ambiguities in favor of the insured.' " *Id.* (quoting *Seeck v. Geico General Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007)).

### The Shelter Policy

Shelter's "AUTO POLICY DECLARATIONS AND POLICY SCHEDULE" (the "declaration sheet") states:

> THE FOLLOWING ENDORSEMENTS ARE A PART OF THIS POLICY AND ARE ATTACHED:
>
> > A–577.5–A UNDERINSURED MOTORISTS $100,000 PER PERSON/ $300,000 PER ACCIDENT

In examining the "MISSOURI UNDERINSURED MOTORIST ENDORSEMENT," referenced in the declaration sheet, the endorsement number at the top right of the page refers to "Limits of Liability" and underneath that line, it recites it is the "Same as Coverage A Limits[.]" The declaration sheet for the "COVERAGE A BODILY INJURY," is $100,000 for each person and $300,000 for each accident.

The "INSURING AGREEMENT" on the endorsement page states:

If:

> (a) an **insured** sustains **bodily injury** as a result of an **accident** involving the **use** of an **underinsured motor vehicle;** and
>
> (b) the **owner** or **operator** of that **underinsured motor vehicle** is legally obligated to pay some or all of the **insured's damages,**

we will pay the **uncompensated damages,** subject to the limit of **our** liability stated in this coverage.

On that same page, the "ADDITIONAL AND REPLACEMENT DEFINITIONS USED [IN] THIS ENDORSEMENT" define "**Uncompensated damages**" to mean: "the portion of the **damages** that exceeds the total amount paid or payable to an **insured** by, or on behalf of, all **persons** legally obligated to pay those **damages.**"

The "LIMITS OF **OUR** LIABILITY" portion of the endorsement provides:

> · · ·
>
> (4) The limits are reduced by the amount paid, or payable, to the **insured** for **damages** by, or for, any **person** who:
>
> > (a) is legally liable for the **bodily injury** to that **insured;** or
> >
> > (b) may be held legally liable for the **bodily injury** to that **insured.**

### No Ambiguity in Set–Off Provisions

Shelter argues its policy language is unambiguous and enforceable and, therefore, it is entitled to set-off against the $100,000 payment Straw received from Farmers on behalf of Heiskell. Straw contends the Shelter policy language is ambiguous as its set-off provision provides coverage in one section and removes it in another.

During oral argument, Straw recognized this Court has the unenviable task of reconciling this Court's decision in *Lynch v.*

*Shelter Mutual Insurance Co.*, 325 S.W.3d 531 (Mo.App. S.D.2010), with the trial court's judgment in this case. *Lynch* was decided after the judgment in this case, and after the parties submitted their briefs in this appeal. Straw argues here that a person of average intelligence reading Shelter's policy might believe they had $100,000 of UIM coverage. While we are inclined to agree with Straw's general observation, we unfortunately do not examine the policy utilizing that measure as our only standard of review. We are constrained by the precedent set in *Lynch* finding a nearly identical set-off provision of a similar policy to be unambiguous to an ordinary person of average understanding. Therefore, we find Shelter's policy language unambiguous with respect to the UIM coverage for an underinsured motorist.

■ " 'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions.' " *Jones*, 287 S.W.3d at 690 (quoting *Seeck*, 212 S.W.3d at 132). Furthermore, " 'if a contract promises something at one point and takes it away at another, there is an ambiguity.' " *Lynch*, 325 S.W.3d at 535 (quoting *Seeck*, 212 S.W.3d at 132). Policy language that is ambiguous will be construed against the insurer. *Jones*, 287 S.W.3d at 690.

■ Absent an ambiguity, an insurance policy must be enforced according to its terms. *Lynch*, 325 S.W.3d at 535. "A court is not permitted to create an ambiguity or distort the language of an unambiguous policy in order to enforce a particular construction that it deems more appropriate." *Id.* A court must not interpret an insurance policy provision in isolation but rather evaluate a policy as a whole. *Id.*

■ In *Lynch*, this Court found:

Shelter's UIM Endorsement plainly states it will pay only the insured's **"uncompensated damages"** *subject to* the limit of liability contained in the UIM Endorsement. The limits that follow make it clear that Shelter is only liable for the difference between the $50,000.00 coverage amount and any payments already made by the tortfeasor. The policy-while it contains a degree of nuance, in that one must read all the sections together before accurately understanding the limit of liability-never states or even implies that Shelter promises to pay the full amount of its coverage limit without first reducing amounts already paid by one legally obligated to do so. Indeed, "definitions, exclusions, conditions are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable."

235 S.W.3d at 537 (internal footnote and citation omitted).

When the policy in *Lynch* is examined side by side with the policy here, we find only insignificant variations in language.

| UIM Coverage & Set-off Provision<br>*Ashley Lynch*<br>*v. Shelter Mutual Insurance Co.* | UIM Coverage & Set-off Provision<br>*Shelter Mutual Insurance Co.*<br>*v. Loyd Straw* |
|---|---|
| INSURING AGREEMENT<br>FOR COVERAGE E–1<br>If an **insured** sustains **bodily injury** as a result of an **accident** involving the **use** of a **motor vehicle,** and is entitled to **damages** | INSURING AGREEMENT<br>If:<br>(a) an **insured** sustains **bodily injury** as a result of an **accident** involving the use of an **underinsured motor vehi-** |

from any person as a result of that bodily injury, we will pay the uncompensated damages subject to the limit of our liability stated in this endorsement.

cle; and

(b) the owner or operator of that underinsured motor vehicle is legally obligated to pay some or all of the insured's damages,

we will pay the uncompensated damages, subject to the limit of our liability stated in this coverage.

| ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT | ADDITIONAL AND REPLACEMENT DEFINITIONS USED THIS ENDORSEMENT |
|---|---|
| . . . <br> (3) Uncompensated damages means the portion of the damages which exceeds the total amount paid or payable to an insured by, or on behalf of, all persons legally obligated to pay those damages. | . . . <br> (3) Uncompensated damages means the portion of the damages that exceeds the total amount paid or payable to an insured by, or on behalf of, all persons legally obligated to pay those damages. |
| LIMIT OF OUR LIABILITY <br> The limit of liability for this Coverage will be the limit of liability stated for this particular endorsement number in the Declarations, subject to the following limitations: | LIMITS OF OUR LIABILITY <br> The limits of liability for this coverage are stated in the Declarations and are subject to the following limitations: |
| . . . <br> (2) The limit of liability stated in the Declarations will be reduced by all amounts paid or payable to the insured making the claim by, or on behalf of, all persons legally obligated to pay any portion of the damages to that insured. | . . . <br> (4) The limits are reduced by the amount paid, or payable, to the insured for damages by, or for, any person who: <br><br> (a) is legally liable for the bodily injury to that insured; or <br> (b) may be held legally liable for the bodily injury to that insured. |

Thus, the same reasoning utilized in *Lynch* is applicable here. According to the "INSURING AGREEMENT," Shelter agreed to pay Straw his "uncompensated damages, subject to the limit of our liability stated in this coverage." The "subject to" clause immediately following their promised coverage for "uncompensated damages," "clearly and plainly suggests to the ordinary person of average understanding that [Shelter's] liability for [Straw's] uncompensated damages is not absolute but is subject to the 'limit of our liability' in the policy." *Lynch*, 325 S.W.3d at 536. On the following page of the policy, the "LIMITS OF OUR LIABILITY" section explains that the "limits are reduced by the amount paid, or payable, to the insured for damages by, or for, any person who: (a) is legally liable for the bodily injury to that insured; or (b) may be held legally liable for the bodily injury to that insured." Here, this limitation refers to Heiskell, whose insurer paid $100,000 to Straw for the damages and bodily injuries Straw suffered by reason of the collision.

Applying this calculation, the total amount due to Straw under his insuring agreement was $100,000; however, the

amount paid by Heiskell's insurer of $100,000 must be subtracted in accordance with the "LIMITS OF **OUR** LIABILITY" section. Thus, Shelter does not owe Straw for uncompensated damages. *See Lynch,* 325 S.W.3d at 536.

Straw urges this Court to affirm the trial court's judgment because the purpose of UIM coverage, as expressed in *Jones* and *Ritchie,* is "to compensate an insured who was not made whole by the tortfeasor's insurance." While *Jones* and *Ritchie* may be read to suggest that the set-off provision in UIM coverage should be from the "total damages" instead of being subtracted from the coverage limit on the policy, our supreme court made clear that set-off provisions that deduct from coverage limits are permissible in this state when the appropriate language is used. In a footnote, the majority explained:

> The dissent is incorrect in characterizing this opinion as holding that limitation of liability clauses are never enforceable. A policy that plainly states it only will pay the difference between the amount recovered from the underinsured motorist and $100,000 is enforceable. In such a case, the mere fact that $100,000 will never be paid out is not misleading, for the policy never suggests that this is its liability limit and never implies that it may pay out that amount. . . .

*Ritchie,* 307 S.W.3d at 141 n. 10.

Here, the parties stipulated to the underlying facts and that only two results could be reached by the trial court; only the interpretation of the insurance policy is at issue. Since we interpret the policy provision in Shelter's favor, pursuant to Missouri Court Rule 84.14 (2010), we reverse the grant of summary judgment for Straw and enter summary judgment in favor of Shelter.

SCOTT, C.J., Dissents in separate opinion.

BATES, J., Concur.

DANIEL E. SCOTT, Chief Judge, dissenting.

I respectfully dissent. Notwithstanding the court's painstaking analysis, I cannot square its result with our supreme court's reasoning in *Jones*[1] and *Ritchie,*[2] which I consider to be controlling on the issues in this case.

I also offer these observations, for whatever they may be worth, with no intent to criticize anyone and with full appreciation for sanctity of contract and stare decisis. It approaches a fiction, in my view, to think that the complicated analyses in this and other recent UIM cases yield "the meaning which would be attached by an ordinary [insurance purchaser] of average understanding."[3] I do not fault this court for making and laying out charts to distinguish its policy interpretation under *Lynch*[4] from the trial court's interpretation based on *Ritchie* and *Jones.* Indeed, it may be almost necessary to do so given the increasing complexity of relevant opinions and the nuances upon which they turn. Yet a divergence may be developing between our espoused consumer-based standard of interpretation and the sophisticated policy comparisons and legal analyses that we actually (and per recent case law, perhaps necessarily) undertake.

---

**1.** *Jones v. Mid–Century Ins. Co.,* 287 S.W.3d 687 (Mo. banc 2009).

**2.** *Ritchie v. Allied Prop. & Cas. Ins. Co.,* 307 S.W.3d 132 (Mo. banc 2009).

**3.** *Ritchie,* 307 S.W.3d at 135 (quoting *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007)).

**4.** *Lynch v. Shelter Mut. Ins. Co.,* 325 S.W.3d 531 (Mo.App.2010).

As things now stand, even legally sophisticated persons may find it practically impossible to know their UIM coverage for such scenarios, which cannot be a desirable situation.