

# Missouri Court of Appeals
## Southern District
### Division Two

JOHN MICHAEL BESHEARS,
Individually, and as
Personal Representative of the Estate of
SUE ELLEN BESHEARS,

    Plaintiffs-Respondents,

v.

SHELTER MUTUAL INSURANCE
COMPANY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. SD32903
Filed: 7-16-15

### APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY

Honorable Gregory Stremel, Associate Circuit Judge

### AFFIRMED AS MODIFIED AND REMANDED WITH INSTRUCTIONS

Shelter Mutual Insurance (Shelter) appeals from a judgment ordering it to pay an

additional $100,000 in underinsured motorist (UIM) benefits to John Michael Beshears,

individually, and as personal representative of the estate of Sue Ellen Beshears,

deceased.[1] This controversy arose because Shelter claimed that it was entitled to reduce

its limit of liability by the $100,000 recovered from the tortfeasor's insurer. After the

parties filed cross motions for summary judgment, the trial court denied Shelter's motion

---

[1] Because John and Sue Ellen share the same surname, we will refer to them
individually by their given names for clarity and collectively as the Beshears.

and granted John's motion. The court decided that Shelter owed additional UIM benefits due to an "inherent ambiguity" in its policy.

The material facts are not in dispute. On June 26, 2009, John was the driver and Sue Ellen was the passenger in their 2009 Toyota Camry. That vehicle was struck by a 1993 Lincoln Town Car driven by Bobby Thomas (Thomas), who ran a stop sign. Thomas had a State Farm auto liability policy with limits of $50,000 per person and $100,000 per accident. As a result of the accident, Sue Ellen was killed and John sustained serious bodily injuries. The parties stipulated that, for purposes of this litigation, the damages from John's personal injury claim and Sue Ellen's wrongful death claim each exceeded $300,000 and together exceeded $600,000. Following the accident, John reached a settlement with Thomas that resulted in State Farm paying its $100,000 per accident policy limits ($50,000 for John's personal injury claim and $50,000 for Sue Ellen's wrongful death claim).

At the time of the accident, the Beshears were insured by a policy issued by Shelter, No. 24-1-4521635-5, which provides UIM coverage. In pertinent part, the "Auto Policy Declarations" (the Declarations) state: "Underinsured Motorist Cov A Limit $250,000 Per Person $500,000 Per Accident A-577.7-A $17.00." The Endorsement states, in pertinent part:

MISSOURI UNDERINSURED MOTORIST ENDORSEMENT

| Endorsement Number | Limits of Liability |
|---|---|
| A-577.7-A | Same as Coverage A Limits |
| A-577.8-A | $____Per Person, $____Per Accident |

(This coverage applies only when the endorsement number and limits of liability are stated in the **Declarations**.)

INSURING AGREEMENT
If:
    (a) an insured sustains bodily injury as a result of an **accident** involving the use of an **underinsured motor vehicle**; and

2

(b) the **owner** or **operator** of that **underinsured motor vehicle** is legally obligated to pay some or all of the **insured's damages**,

**we** will pay the **uncompensated damages**, subject to the limit of our liability stated in this coverage.

No insurance is provided under this coverage until settlements or payment of judgments have exhausted the limits of all liability bonds and policies that apply to the **insured's damages**.

ADDITIONAL AND REPLACEMENT DEFINITIONS USED IN THIS ENDORSEMENT

As used in this coverage,
....

(3) **Uncompensated damages** means the portion of the damages that exceeds the total amount paid, or payable, to an **insured** by, or on behalf of, all **persons** legally obligated to pay those **damages** ….

LIMITS OF **OUR** LIABILITY

The limits of liability for this coverage are stated in the **Declarations** and are subject to the following limitations: ….

(4) The limits are reduced by the amount paid, or payable, to the **insured** for **damages** by, or for, all **persons** who:

(a) are legally liable for the **bodily injury** to that **insured**; or

(b) may be held legally liable for the **bodily injury** to that **insured**.

(Emphasis in original.)

After State Farm paid the limits of Thomas' liability policy, John made a claim against Shelter for UIM coverage. Shelter paid $200,000 to John for his personal injury claim and $200,000 to John for Sue Ellen's wrongful death claim. Shelter determined that $400,000 figure by reducing the stated $500,000 per accident limit to account for the $100,000 paid to John by State Farm. According to Shelter, subparagraph (4) of the limit of liability provision in the UIM Endorsement authorizes that $100,000 set-off.

3

Thereafter, John filed the underlying lawsuit against Shelter. John claimed that he was entitled to recover the full $500,000 per accident policy limit for UIM coverage from Shelter. The parties filed cross-motions for summary judgment. John argued that the set-off provision in Shelter's UIM Endorsement could not be enforced due to ambiguities in the policy. The trial court granted John's motion and denied Shelter's motion. The court determined that there was an "inherent ambiguity" in Shelter's policy, in that "the Declaration page of the policy clearly indicates there is underinsured motorist coverage of $250,000 per person/$500,000.00 per accident, with no language in the Declaration page indicating there would be any off-set." The court therefore ordered Shelter to pay the additional $100,000 in UIM benefits. This appeal followed.

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); ***ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 381–82 (Mo. banc 1993).[2] The amount of UIM benefits provided by Shelter's policy to John involves "the interpretation of an insurance policy, which is a question of law that [an appellate court] reviews *de novo*." ***Karscig v. McConville***, 303 S.W.3d 499, 502 (Mo. banc 2010); *see* ***Rutledge v. Bough***, 399 S.W.3d 884, 886 (Mo. App. 2013).

Shelter contends the trial court erred in declaring that the policy provided an additional $100,000 in UIM coverage because:

> The applicable UIM limit is $400,000, which Shelter has paid, in that the limit of liability stated in the Declarations for UIM Coverage is $500,000, and in that the policy clearly and unambiguously provides for a reduction, or "setoff," of the declared UIM coverage limit equal to the amount paid by [liability insurer] to the Beshears.

---

[2] All rule references are to Missouri Court Rules (2015). All statutory references are to RSMo (2000).

4

To support this argument, Shelter cites our opinions in **Shelter Mut. Ins. Co. v. Straw**, 334 S.W.3d 592 (Mo. App. 2011), and **Lynch v. Shelter Mut. Ins. Co.**, 325 S.W.3d 531 (Mo. App. 2010). Shelter's argument fails because the set-off analysis used in these opinions has been overruled *sub silentio* by our Supreme Court's later decision in **Manner v. Schiermeier**, 393 S.W.3d 58 (Mo. banc 2013).[3]

Manner's American Family policies provided him with a total of $300,000 in UIM coverage. As an additional insured on his father's American Standard policy, Manner also had an additional $100,000 of UIM coverage. Manner had $1,500,000 in total damages. He received $100,000 from the tortfeasor's insurer. **Id**. at 60-61. Each of the insurers claimed it was entitled to reduce its UIM limits by the amount paid by the tortfeasor. Our Supreme Court held that "because [Manner's] unrecovered damages exceed the total liability limits of the stacked policies, the insurers are not entitled to offset the amount recovered from other tortfeasors against those liability limits." **Id**. at 60. We set forth in full the discussion of that issue from **Manner**:

### C. Offset is Not Permitted.

Insurers assert that, because the limits of liability provision in the policies' underinsured motorist endorsement states that underinsured motorist coverage will be reduced by a "payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle," the $100,000 that the tortfeasor's insurer paid should offset the amount [Manner] can recover under the underinsured motorist endorsement.

The Court rejects this argument. The policy promises to pay the listed limits of liability, not simply the listed limits of liability reduced by the

---

[3] After **Lynch** and **Straw** were decided by our district, the Western District reached the opposite conclusion about whether there was an ambiguity in Shelter's policy concerning the UIM set-off provision. *See* **Long v. Shelter Ins. Cos.**, 351 S.W.3d 692, 702-05 (Mo. App. 2011); **Wasson v. Shelter Mut. Ins. Co.**, 358 S.W.3d 113, 121-26 (Mo. App. 2012). The analysis of the set-off issue in **Long** and **Wasson** is consistent with the rationale adopted by our Supreme Court in **Manner**.

5

amount paid by the tortfeasor. Insurers' construction of the policy would permit the policy to promise to pay the full limits of liability and yet these limits never would be paid as the amount of liability promised always would be reduced by the recovery from the other driver.[8]

> [8] This is because, if the amount recoverable under the insurance policy always is reduced by the amount collected by the tortfeasor, an insured never could recover the entire liability limit set out in the underinsured motorist endorsement because, by definition, an underinsured motorist is someone who paid something toward the insured's damages, although not enough to satisfy those damages nor enough to exceed the insured's underinsured motorist limits.

> As *Ritchie* noted, this conflict at best creates an ambiguity that must be resolved in favor of coverage up to the amount listed in the limits of liability section if "after deducting the amounts already paid, damages equaling or exceeding those limits are still outstanding." *Ritchie,* 307 S.W.3d at 140.

> Here, [Manner's] damages were $1.5 million. Reducing those damages by the $100,000 paid by the tortfeasor leaves a remaining $1.4 million in damages, which far exceeds the $400,000 he can recover under the policies. The full limits of the limits of liability, therefore, are recoverable.

*Id*. at 66. **Manner** now controls the analysis of the set-off issue and is dispositive here.[4]

As the trial court correctly determined, there is an inherent ambiguity in the UIM coverage of Shelter's policy for the reason explained in **Manner**. Because the parties stipulated that the damages for John's personal injury claim and Sue Ellen's wrongful death claim each exceeded $300,000, there is at least $100,000 in uncompensated damages that can be recovered from Shelter's UIM coverage. Shelter's point is denied.

That being said, there is one other matter requiring our attention. As noted above, the trial court's judgment ordered that $50,000 of Shelter's UIM coverage be paid to John as personal representative of Sue Ellen's estate. As Shelter correctly argues in its brief, the right to recover UIM benefits for Sue Ellen's death accrues to the statutory

---

[4] To the extent **Lynch** and **Straw** conflict with **Manner**, our opinions in those cases should no longer be followed.

beneficiaries listed in § 537.080, rather than to her estate. *See **Sullivan v. Carlisle***, 851 S.W.2d 510, 513 (Mo. banc 1993). Therefore, the trial court's judgment is affirmed as modified. We affirm that part of the judgment ordering Shelter to pay $50,000 in UIM benefits to John for his personal injury claim. We affirm the trial court's decision that Shelter must pay an additional $50,000 in UIM benefits for Sue Ellen's wrongful death claim, but the judgment must be modified to pay that additional sum to John in his capacity as a representative of the class of persons entitled to recover for Sue Ellen's wrongful death pursuant to § 537.080. The cause is remanded for entry of an amended judgment in conformity with this opinion.


JEFFREY W. BATES, P.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR