

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| ANNETTE VOGELSANG, | ) | ED109377 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 18SL-CC02099 |
| | ) | |
| THE TRAVELERS HOME AND MARINE | ) | Honorable Kristine A. Kerr |
| INSURANCE COMPANY, | ) | |
| | ) | Filed: June 29, 2021 |
| Respondent. | ) | |

Annette Vogelsang (Appellant) appeals from the trial court's grant of summary judgment

in favor of The Travelers Home and Marine Insurance Company (Travelers) on her claim for

coverage under her homeowner's insurance policy. We affirm.

## BACKGROUND

Appellant maintained a homeowner's insurance policy (Policy) underwritten by Travelers

on her house in Sunset Hills. Her grandson, James Vogelsang (Grandson), resided with her from

2016 to 2018. On November 9, 2017, the Sunset Hills Police Department executed a search

warrant at Appellant's house and discovered liquid and solid methamphetamine in the basement.

Grandson was subsequently arrested for possession and distribution of methamphetamine. The

St. Louis County Public Works Department (Public Works) posted an Order to Vacate on

Appellant's house. The Order to Vacate required testing to determine whether the house was

contaminated, and if so, mandated the house to be remediated before it could be reoccupied. Subsequent testing confirmed the presence of methamphetamine throughout the house.

On November 20, 2017, Appellant submitted a claim to Travelers for the costs to remove the methamphetamine contamination in her house. In the course of Travelers' investigation, Grandson admitted he was aware of the methamphetamine use in Appellant's house during an interview. Travelers denied Appellant's claim because the Policy did not provide coverage for "[t]he costs to comply with any ordinance or law which requires any 'insured' or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure." It defined pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The Policy also contained an exclusion with the same language. Additionally, the Policy excluded "any loss arising out of any act an 'insured' commits or conspires to commit with the intent to cause a loss. In the event of such loss, no 'insured' is entitled to coverage, even 'insureds' who did not commit or conspire to commit the act causing the loss."

On May 24, 2018, Appellant filed a petition in the St. Louis County Circuit Court alleging Travelers breached the Policy and vexatiously refused to pay. Travelers's answer argued, *inter alia*, that the Policy does not cover Appellant's claim because the losses were costs of complying with an ordinance or law requiring an insured to test for and clean up the effects of pollutants. On September 30, 2020, Travelers moved for summary judgment arguing that there was no coverage under the ordinance and law provisions, and that the intentional act exclusion applied. On December 2, 2020, the trial court granted Travelers's motion.

This appeal follows.

2

**DISCUSSION**

Appellant raises three points on appeal. She argues the trial court erred in granting Travelers's motion for summary judgment because: (I) there was coverage under the ordinance and law provisions of the Policy in that the ordinance at issue did not require a cleanup and that the substance at issue was not a pollutant; (II) the intentional act exclusion did not apply in that no insured committed an act or did anything relevant to the issues in this suit; and (III) the vexatious refusal claim is an issue for a jury, not summary judgment. We find the lack of coverage in Point I dispositive and need not address Appellant's second and third points.

*Standard of Review*

Appellate courts review the grant of summary judgment *de novo*. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011). In reviewing the decision to grant summary judgment, we apply the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is proper only if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* The record is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020) (quoting *Goerlitz*, 333 S.W.3d at 453). Additionally, the interpretation of an insurance policy is a question of law which appellate courts review *de novo*. *See Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010).

**Point I**

Appellant argues the trial court erred in granting summary judgment because there was coverage under the ordinance and law provisions of the policy. She asserts that the ordinance at

3

issue did not require a cleanup, and that methamphetamine was not a pollutant. Thus, we address two issues: (1) whether methamphetamine is a pollutant; and (2) whether an ordinance or law required Appellant to clean up the pollutant from her house.

*Analysis*

When construing an insurance policy, the words must be given their plain meaning consistent with the reasonable expectations, objectives, and intent of the parties. *Cockerham v. Am. Family Mut. Ins. Co.*, 561 S.W.3d 862, 865 (Mo. App. E.D. 2018) (citing *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. App. E.D. 1993)). A term's plain meaning is that which would be attached by an ordinary person of average understanding if purchasing insurance. *Id.* (citing *Jones v. Mid-Century Ins. Co.,* 287 S.W.3d 687, 690 (Mo. banc 2009)). Words or phrases in an insurance contract must be interpreted in the context of the policy as a whole and not considered in isolation. *Id.* When a policy does not define a particular term, courts use the ordinary meaning of the word as set forth in the dictionary. *Id.* (citing *Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 708 (Mo. banc 2011)).

The Policy does not cover the costs of complying with an ordinance or law that requires an insured to remediate pollutants in a covered building. Appellant asserts that methamphetamine does not fall under the Policy's definition of a "pollutant," which defines a "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." We note that this is a very broad definition. *See e.g.*, *Am. Nat. Prop. & Cas. Co. v. Wyatt*, 400 S.W.3d 417, 424 (Mo. App. W.D. 2013) (holding this standard definition of pollutants was essentially "boundless, for there is virtually no substance or chemical in existence that would not irritate or damage some person or property."). Missouri courts have held that friable asbestos meets this definition of a pollutant,

4

but carbon monoxide does not. *See Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 661, 666 (Mo. App. E.D. 2001); *Wyatt*, 400 S.W.3d at 425.

The Policy does not define "contaminant" as used in the definition of "pollutant." Merriam-Webster sensibly defines a "contaminant" as "something that contaminates," and "contaminate" as:

> 1a **:** to soil, stain, corrupt, or infect by contact or association
> //Bacteria *contaminated* the wound.
> b **:** to make inferior or impure by admixture
> //iron *contaminated* with phosphorus
> 2 **:** to make unfit for use by the introduction of unwholesome or undesirable elements
> //water *contaminated* by sewage

*See* Contaminate, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/contaminate (last visited June 22, 2021). We find that methamphetamine falls within the ordinary meaning of a "contaminant" because it is a substance that makes a house "unfit for use by the introduction of unwholesome or undesirable elements." Indeed, Public Works determined Appellant's house was unfit for human occupation resulting from the presence of methamphetamine. Since methamphetamine is a contaminant, it meets the Policy's definition of a "pollutant."

The remaining issue is whether the Order to Vacate from Public Works required Appellant to remediate the pollutant in her house. Appellant argues the Order to Vacate required her to remove the methamphetamine *only if* she sought to reoccupy her house. She asserts that because she was not required to reoccupy her house, she was accordingly not actually required to clean up the methamphetamine.

Section 301.2 of the St. Louis County Property Maintenance Code (Code) provides that "[t]he owner of the premises shall maintain the structures and exterior property in compliance with these requirements[.]" Section 109.1 of the Code allows a code official to prohibit human

occupancy of a building if it presents an "imminent danger," which exists "when there is actual or potential danger to the building occupants or those in the proximity of any structure because of explosives, explosive fumes or vapors or the presence of toxic fumes, gases or materials, or operation of defective or dangerous equipment[.]"  Section 109.1 of the Code makes it unlawful to enter a structure that is an "imminent danger" except for the purpose of securing the structure, making required repairs, removing the hazardous condition, or demolishing the structure.

The Order to Vacate cited Section 109.1 of the Code and declared the presence of methamphetamine in Appellant's house an imminent danger, permitting entry into the structure only for the purpose of removing the methamphetamine contamination.  Appellant correctly points out that she could decide to not remove the methamphetamine and simply leave her house unoccupied.  However, it would be patently unreasonable for anyone to abandon a house rather than remediate methamphetamine.  Appellant cites no caselaw, nor could we find any, to support her argument that she could elect to leave the house vacant because she was not specifically required to do anything further by this ordinance.  We disagree and find this does not mean that the Order to Vacate is not a requirement to clean up the methamphetamine contamination.  Moreover, we find her assertion unreasonable because an ordinary person purchasing homeowner's insurance would understand that an ordinance prohibiting entry into a covered house until a hazardous condition is removed is actually a requirement to remove it.  Accordingly, we find that the Order to Vacate was a requirement to clean up the methamphetamine from Appellant's house.  Therefore, Appellant's claim for the cost of cleaning up the methamphetamine from her house was not covered by the Policy, and the trial court did not err in granting summary judgment on that basis.  Point I is denied.

6

We need not consider Appellant's remaining points because the lack of coverage is dispositive as to both.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
Lisa P. Page, Judge

Sherri B. Sullivan, P.J. and
Thomas C. Clark, II, J., concur.