

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| MARY SIMMONS, | ) | No. ED102140 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1322-CC09225 |
| | ) | |
| FARMERS INSURANCE COMPANY, INC., | ) | Honorable Robert H. Dierker |
| | ) | |
| Appellant. | ) | Filed:  October 6, 2015 |

Farmers Insurance Company, Inc. ("Appellant") appeals the trial court's grant of Mary Simmons' ("Respondent") cross-motion summary judgment on her claim for underinsured motorist coverage under a policy issued by Appellant to Respondent's husband.  We affirm.

### I.      BACKGROUND

James Simmons ("the Insured") was a passenger in a vehicle driven by Respondent, his wife, on November 3, 2009 which was involved in a collision with Jeremy Taylor, causing the Insured's death.  Taylor maintained automobile liability insurance through American Family Insurance Company which had a bodily injury liability limit of $50,000 per person.  At the time of the accident, the Insured retained an insurance policy issued by Appellant which carried an underinsured motorist limit of $50,000 per person ("the Policy").

The Policy contained a declaration page which set underinsured motorist coverage at $50,000 per person and $100,000 per accident, without stating any further limitations.

The Policy also contained a limits of liability section on page one of the underinsured motorist endorsement which provided:

**Limits of Liability**

a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of UNDERinsured Motorist Coverage stated in this policy, and the most we will pay will be the lesser of:

    1. The difference between the amounts of an **insured person's damages for bodily injury**, and the amount paid to the Insured **person** by or for any person or organization who is or may be held legally liable for the **bodily injury**; or

    2. The limits of liability of this coverage.

(Emphasis in original). On page two of the same document, in the definitions section, an additional endorsement provided:

c. **Underinsured Motor Vehicle** – means a land motor vehicle to which a **bodily injury** liability bond or policy applies at the time of the **accident** but its limits for **bodily injury** liability are less than the limits of liability for this coverage.

(Emphasis in original). Respondent filed a petition seeking underinsured motorist benefits under the Policy in the amount of $50,000. The parties filed cross-motions for summary judgment, and the trial court held the Policy was ambiguous and granted Respondent's motion, awarding her $50,000 in underinsured motorist benefits. This appeal followed.

## II.  DISCUSSION

Appellant brings two points on appeal. In its first point, Appellant claims the trial court erred in entering summary judgment in favor of Respondent because Respondent's injuries were not caused by an "underinsured motorist" as defined by the terms of the Policy. In its second point, Appellant contends the trial court erred in entering summary judgment in favor of Respondent because the trial court found it was not bound by the result in *Rodriguez v. General*

2

*Accident Ins. Co.*, 808 S.W.2d 379 (Mo. banc 1991), which Appellant contends controls the result here. The points are highly intertwined, and the applicability of *Rodriguez* is central to both. As such, we address them together.

**A.     Standard of review**

Summary judgment is reviewed essentially de novo and affirmed only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "When the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court." *Grable v. Atlantic Cas. Ins. Co.*, 280 S.W.3d 104, 106 (Mo. App. E.D. 2009) (quotations omitted). Whether an insurance policy is ambiguous is a matter of law. *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 813 (Mo. banc 1997).

**B.     General law and the *Rodriguez* holding**

In this case, Appellant argues the trial court erred in granting summary judgment in favor of Respondent because the Respondent's damages were not caused by an "underinsured motorist" as defined by the terms of the Policy. Specifically, Appellant asserts the limit of liability for Taylor's, the tortfeasor's, bodily injury policy ($50,000) was equal to, not less than, the limit of liability under the Policy's underinsured motorist coverage (also $50,000), and therefore the Policy does not apply under its own unambiguous terms. We disagree.

The key issue before us is whether the Policy is ambiguous. Absent an ambiguity, an insurance policy must be enforced according to its terms. *Rodriguez*, 808 S.W.2d at 382. However, if the policy language is ambiguous, we construe the ambiguity against the insurer as the drafter of the contract. *Gulf Ins. Co.*, 936 S.W.2d at 814. "Though it is the duty of the court

3

to reconcile conflicting clauses in a policy so far as their language reasonably permits, when reconciliation fails, inconsistent provisions will be construed most favorably to the Insured." *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983) (citations omitted). In construing the policy terms, we apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . .." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (quotations omitted).

An ambiguity exists if the language used is reasonably open to different interpretations or where there is duplicity, indistinctiveness, or uncertainty in meaning. *Gulf Ins. Co.*, 936 S.W.2d at 814. Similarly, a contract that promises something at one point and takes it away at another is ambiguous. *Behr v. Blue Cross Hospital Service, Inc.*, 715 S.W.2d 251, 256 (Mo. banc 1986).

Appellant asserts Taylor, the tortfeasor in this case, was not driving an "underinsured motor vehicle" as the Policy defined that term, and the definition was unambiguous under the analysis used in *Rodriguez*. In that case, the insurance policy provided $50,000 of underinsured motorist coverage, and the policy holder was injured by another driver with $50,000 of liability coverage. *Rodriguez*, 808 S.W.2d at 380. The policy defined "[u]nderinsured motor vehicle" as one which had a "limit for bodily injury liability is less than the limit of liability for this coverage," and stated that its underinsured motorist award would be reduced by "all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." *Id.* at 381. The Supreme Court held the policy holder was not entitled to recover under the policy because the other driver was not an underinsured motorist under the policy. *Id.* at 382-83. It reasoned that the policy clearly defined an underinsured motor vehicle as one whose limits were "less than the limit of liability for this coverage," whereas the other driver's coverage was equal to the liability limit. *Id.* at 382. Further, that definition was reinforced by

4

the policy's explicit set-off provision, which explicitly reduced the under-insured motorist coverage by the amount recovered from another legally responsible party. *Id*.

## C.     Developments following *Rodriguez*

*Rodriguez* was decided in 1991. In the years following, subsequent holdings by the Missouri Supreme Court and Court of Appeals have further refined its analysis.

First, in *Seeck*, the Supreme Court found an underinsured motorist policy ambiguous where the policy had defined an underinsured motor vehicle as one with a liability coverage limit less than the policy's own stated limit, similar to *Rodriguez*. 212 S.W.3d at 133. However, the policy also contained an "excess insurance clause," which provided that the coverage in the policy was "excess over any other insurance available to the Insured." *Id*. at 132. The Court reasoned that the excess insurance clause made the policy's other stated limits ambiguous, and distinguished *Rodriguez*, noting "only the underinsured motor vehicle definition and the limit of liability language were held unambiguous" in the policy at issue in *Rodriguez*. *Id*. at 133 (quotations omitted).

Next, the Supreme Court addressed ambiguities in underinsured motorist policies with explicit set-off provisions. In *Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132 (Mo. banc 2009), the Court found an ambiguity in the policy resulting in a ruling that the insurer could not set off the payment from the tortfeasor against its stated limit of liability; it could only set off against the Insured's total uncompensated damages. *Id.* at 140-41. The Court noted that while the policy ostensibly provided $100,000 of underinsured motorist coverage, the insurer would never have to pay that amount if it was allowed to set off the payment from the tortfeasor, thus creating an ambiguity, which was required to be resolved in the Insured's favor. *Id*. at 141 n. 10. *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687 (Mo. banc 2009) produced a similar holding

5

under a similar set-off provision. *Id*. at 691-92. The *Jones* Court directly addressed the *Rodriguez* holding, and found that it did not conflict with the result, because the policy at issue in *Rodriguez* explicitly provided that its limits of liability would be reduced by payments from the tortfeasor's insurer. *Id*. at 692 n. 3. The *Rodriguez* holding, therefore, allows for insurers to place limitations on their coverage, but "*Rodriguez* did not give an insurer license to make contrary-to-fact statements about the coverage it provides in a policy." *Id*.

Finally, in *Miller v. Ho Kun Yun*, 400 S.W.3d 779 (Mo. App. W.D. 2013), the Western District applied the reasoning in *Seeck, Ritchie*, and *Jones* to an ambiguity concerning underinsured motorist coverage in the circumstances present here – where the policy's declarations page and definitions page conflict. *Miller*, 400 S.W.3d at 781. On the declarations page at issue in that case, the policy declared it included underinsured motorist coverage in the amount of $100,000 per person or $300,000 per accident and did not list any further conditions or limitations. *Id*. at 783. Later in the policy, the underinsured motorist endorsement stated simply:

> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the underinsured motor vehicle.

*Id*. at 783. However, on the definitions page, it defined an "underinsured motor vehicle" as one that had liability coverage less that the specified underinsured motorist coverage limit. *Id*. at 785-86. The Western District held the policy holder was entitled to recover underinsured motorist benefits under the policy. *Id*. at 793.

The Western District acknowledged the term "underinsured motor vehicle" was unambiguously defined in the definitions section as one whose policy limits were *less* than the specified underinsured motorist coverage. *Id*. at 785-86. Under that definition, the tortfeasor

6

was not driving an "underinsured motor vehicle" as contemplated by the policy under the *Rodriguez* analysis. *Id*. at 785. However, the *Miller* Court found the *Rodriguez* analysis did not ultimately resolve the issue, as "[s]ubsequent decisions have made clear that the fact that a definition is clear and unambiguous does not end the inquiry as to the existence of an ambiguity until the court has reviewed the whole policy to determine whether there is contradictory language that would cause confusion and ambiguity in the mind of the average policy holder." *Id*. at 786 (quotations omitted). Specifically, even where a definition is unambiguous in one section, if a contract "promises something at one point and takes it away at another, there is an ambiguity." *Id*. (quotations omitted).

With regard to underinsured motorist coverage, the Court noted that analysis of the coverage must carefully examine the declarations page, which is generally less clear about the fact that the coverage is designed as gap insurance between the other driver's liability policy rather than excess coverage,[1] and the language used in the declarations page does not adequately alert the ordinary insured of its limitations. *Id*. at 787. "This fact makes it necessary to strictly and carefully consider any language in the endorsement which might also suggest that the coverage could be considered excess." *Id*.

Using this analysis, the Court held the policy as a whole was ambiguous. *Id*. at 793. The declarations sheet and the endorsement used language that would lead an ordinary insured to believe he was entitled to compensatory damages *above and beyond* the coverage provided by the other driver's liability coverage, and expressed no limitations. *Id*. at 792. The Court found that language controlling in light of *Seeck*, *Ritchie*, and *Jones*, and held "that *any contradictory language anywhere* in the policy was enough to create an ambiguity that would allow set-off

---

[1] Gap insurance pays the difference between the tortfeasor's liability limit and the stated limit in the policy holder's own coverage. Excess coverage pays the policy holder's coverage limit *in addition to* the tortfeasor's liability limit up to the amount of the policy holder's actual damages. *See Miller*, 400 S.W.3d at 787.

7

only against total damages." *Id*. (emphasis in original). The Western District affirmed its *Miller* holding in *Fanning v. Progressive Northwestern Ins. Co.*, 412 S.W.3d 360 (Mo. App. W.D. 2013), which involved similar facts.

**D.     Ambiguities in the instant Policy**

Turning now to the facts in this case, the trial court held "the policy before the Court provides coverage on both the Declarations page and in the Limits of Liability section, but negates it in the definitions section. Accordingly, because a conflict exists between the Declarations page and the Limits of Liability section of the policy and the definition of underinsured motor vehicle, the policy must be construed in favor of the policy holder to provide coverage."

We agree with the trial court that the Policy at issue here contains two ambiguities. The first ambiguity arises between the declaration sheet provided with the Policy, which provides $50,000 bodily injury per person ($100,000 per accident) for underinsured motorist coverage, without any further limitations stated. This lack of limitations conflicts with the definition of underinsured motorist coverage set out in paragraph "c" of the definitions section which only allows for underinsured motorist coverage where the tortfeasor's liability limits are less than $50,000:

> c.   **Underinsured Motor Vehicle** – means a land motor vehicle to which a
>        **bodily injury** liability bond or policy applies at the time of the **accident** but
>        its limits for **bodily injury** liability are less than the limits of liability for this
>        coverage.

(Emphasis in original). Reading the declarations page in isolation means Appellant would be obligated to pay Respondent $50,000, but reading paragraph "c" in isolation would mean no recovery under these circumstances. As such, these sections are in conflict. Here, as in *Miller*, the declarations page states the Insured was entitled to underinsured motorist coverage

8

and does not reference any limitations or offsets on that coverage. The limitations are not introduced until the definitions page, which notes the coverage only applies in cases where the tortfeasor's limit of liability is less than the stated coverage, regardless of the total extent of the Insured's injuries. The Policy therefore provides coverage, then quickly negates in a section the average insured is much less likely to examine. Nothing in the declaration sheet indicates the coverage is merely gap coverage between the tortfeasor's liability limit and the underinsured motorist limit, rather than comprehensive coverage necessarily excess to the tortfeasor's liability coverage toward the Insured's total injuries. That limitation also follows in the less obvious definitions page. Pursuant to *Miller*, where the declarations page states a coverage amount but does not adequately alert the Insured to its limitations, we must strictly and carefully consider any language in the endorsement which might also suggest that the coverage could be considered excess. *Miller*, 400 S.W.3d at 787.

We also find there is a second ambiguity, found in the underinsured motorist endorsement itself. The endorsement first states it provides coverage as follows:

**Limits of Liability**

a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of UNDERinsured Motorist Coverage stated in this policy, and the most we will pay will be the lesser of:

1. The difference between the amounts of an **insured person's damages for bodily injury**, and the amount paid to the Insured **person** by or for any person or organization who is or may be held legally liable for the **bodily injury**; or

2. The limits of liability of this coverage.

(Emphasis in original). Under section "a" the coverage is provided as the difference between the amount of an insured person's damages for bodily injury and the amount paid to the Insured person by or for the tortfeasor up to the limits of the coverage. Contrarily, under section

9

"c," set out above, the Policy takes away the coverage it has already granted by limiting any recovery to the limit of the liability amount for the coverage. Here, the parties have stipulated that Respondent's total damages for the death of her husband exceed $100,000, and therefore a $50,000 payment by the tortfeasor's liability coverage, would still leave unpaid damages which exceed $50,000. Accordingly, reading section "a" in isolation, Appellant would be obligated to pay Respondent $50,000, the total limit of liability coverage. However, reading paragraph "c" in isolation, Respondent would not be obligated to pay Appellant anything, because the tortfeasor's limit for liability was equal to, not less than the limits for liability under the Policy. These two sections are therefore also in conflict with each other.

The *Rodriguez* holding does not change this outcome. As noted by the Supreme Court in *Seeck*, "only the underinsured motor vehicle definition and the limit of liability language were held unambiguous" in *Rodriguez*. 212 S.W.3d at 133 (quotations omitted). *Rodriguez* did not address the additional ambiguity found in the declarations page here. As set out in *Miller*, the declarations page is generally less clear that the coverage is designed as gap insurance between the tortfeasor's liability policy and Policy's own coverage limit, and the language used in the declarations page does not adequately alert the ordinary insured of its limitations. *Miller*, 400 S.W.3d at 787. This lack of clarity triggers an additional level of scrutiny when reading the rest of the Policy, and the court must "strictly and carefully consider any language in the endorsement which might also suggest that the coverage could be considered excess." *Id.* This additional level of scrutiny was not present in *Rodriguez*.

In light of these patent ambiguities and contradictions, we must construe the contract against the party who drafted it ambiguously, the insurer. *Gulf Ins. Co.*, 936 S.W.2d at 814.

As the Western District wisely observed in *Miller*:

10

> The law is not concerned merely with what an ordinary insured would be caused to believe from reading his existing policy after a bodily injury has occurred. The law is also concerned with what an ordinary purchaser of insurance would be caused to believe about the coverage from review of the policy upon initial receipt of the policy, before an injury has occurred, while there remains time to adjust coverages in light of his or her understanding of the policy contents. The auto insurance purchaser, upon receipt of his policy (perhaps in the mail several weeks after purchase) will certainly read the declaration sheet to ensure no miscommunication about coverage levels, even if the purchaser reads little else.

*Miller*, 400 S.W.3d at 791 (citations omitted). The trial court did not err in finding the Policy ambiguous. Point one is denied.

In its second and final point, Appellant asserts the trial court erred in finding it was not bound by the result in *Rodriguez*. As stated above, *Rodriguez* is distinguishable and does not control the outcome here. Therefore, Appellant's argument on whether the trial court erroneously disregarded *Rodriguez* is irrelevant. Point two is denied.

## III.   CONCLUSION

The trial court's grant of summary judgment in favor of Respondent is affirmed.

_____
ROBERT M. CLAYTON III, Judge

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.

11