

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| NATIONWIDE INSURANCE COMPANY OF AMERICA, | ) ) ) | No. ED102829 |
| Appellant, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | Cause No. 14SL-CC01166 |
| PATRICE THOMAS, | ) ) | Honorable Joseph L. Walsh |
| Respondent. | ) | Filed:  January 19, 2016 |

Nationwide Insurance Company of America ("Appellant") appeals the trial court's grant of summary judgment in favor of Patrice Thomas ("Respondent") on Appellant's declaratory judgment action involving underinsured motorist coverage under a policy issued by Appellant covering a vehicle in which Respondent was a passenger.  We affirm.

### I.  BACKGROUND

Respondent was a passenger in a vehicle driven by her son-in-law, Brandt Jefferson, on December 12, 2013, when their vehicle was involved in a collision with Edward Close, injuring Respondent.  Close was at fault in the accident.  Close maintained automobile liability insurance through another insurer with a bodily injury liability limit of $100,000 per person.  At the time of the accident, Jefferson retained an insurance policy issued by Appellant which included underinsured motorist coverage ("the Policy").

The Policy contained a declaration page which set underinsured motorist coverage limit at $50,000 per person, without stating any further limitations or qualifications. It stated a premium of $31.95 for the underinsured motorist coverage.

The Policy provided in the insuring agreement of the underinsured motorist endorsement:

INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle."

The policy defined "[u]nderinsured motor vehicle" as a vehicle whose "limit for bodily injury liability is less than the limit of liability for this coverage." The underinsured motorist endorsement also contained the following clause:

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles shown in the Declarations; or

4. Vehicles involved in the accident. A vehicle and attached "trailer" are considered one vehicle. Therefore, the Limit of Liability will not be

2

increased for an accident involving a vehicle which has an attached "trailer." . . .

E. Any amount otherwise payable for damages under this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

It is undisputed that Respondent suffered damages in excess of $150,000 as a result of the accident. After the accident, on April 10, 2014, Appellant filed a petition for declaratory judgment to determine whether Respondent was entitled to underinsured motorist benefits under the Policy, and Respondent filed a counterclaim for declaratory judgment. The parties then filed cross-motions for summary judgment. The trial court found the Policy was ambiguous and granted Respondent's motion, awarding her underinsured motorist benefits. This appeal followed.

## II.    DISCUSSION

In its sole point on appeal, Appellant asserts the trial court erred in granting summary judgment in favor of Respondent, because Respondent's injuries were not caused by an "underinsured motorist" as unambiguously defined by the terms of the Policy. We disagree.

Summary judgment is reviewed essentially de novo and affirmed only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "When the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court." *Grable v. Atlantic Cas. Ins. Co.*, 280 S.W.3d 104, 106 (Mo. App. E.D. 2009) (quotations omitted). Whether an insurance policy is ambiguous is a matter of law. *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 813 (Mo. banc 1997).

The key issue before us is whether the Policy is ambiguous. Absent an ambiguity, an insurance policy must be enforced according to its terms. *Rodriguez v. General Acc. Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991). However, if the policy language is ambiguous, we construe the ambiguity against the insurer as the drafter of the contract. *Gulf Ins. Co.*, 936 S.W.2d at 814. In construing the policy terms, we apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . .." *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (quotations omitted). An ambiguity exists if the language used is reasonably open to different interpretations or where there is duplicity, indistinctiveness, or uncertainty in meaning. *Gulf Ins. Co.*, 936 S.W.2d at 814. Similarly, a contract that promises something at one point and takes it away at another is ambiguous. *Behr v. Blue Cross Hosp. Service, Inc. of Missouri*, 715 S.W.2d 251, 256 (Mo. banc 1986).

In underinsured motorist coverages cases, an unambiguous definitions section does not end the inquiry as to the existence of an ambiguity. *Simmons v. Farmers Insurance Company, Inc.*, 2015 WL 5829654 at *4 (Mo. App. E.D.). Rather, a court must "review[] the whole policy to determine whether there is contradictory language that would cause confusion and ambiguity in the mind of the average policy holder." *Id*. Specifically, the reviewing court must carefully examine the declarations page, which is generally less clear about the coverage's characteristics. *Id*. If the declarations page does not adequately alert the ordinary insured of its limitations, this triggers an additional level of scrutiny when reading the rest of the policy for any language that may suggest the coverage is excess (payment of the full underinsured motorist coverage amount up to the insured's total injury costs), as opposed to gap (paying only the difference between the tortfeasor's liability limit and the underinsured motorist limit). *Id*. at *4 fn. 1, *5.

4

Our Court recently addressed the issue of ambiguities in underinsured motorist coverage in *Simmons*.[1] In that case, a passenger was involved in a collision with another motorist. *Id*. at *1. The other motorist's liability coverage limit and the passenger's underinsured motorist coverage limit were equal, at $50,000 per person. *Id*. The passenger's policy defined an underinsured motor vehicle as one with policy limits for liability "less than" the limits of liability for the passenger's underinsured motorist coverage. *Id*. However, the policy also had a declarations page which set the underinsured motorist coverage at $50,000 per person without stating any further limitations. Also, the policy's limits of liability section stated the most the insurer would pay was either the policy maximum or "The difference between the amounts of an **insured person's damages for bodily injury**, and the amount paid to the Insured **person** by or for any person or organization who is or may be held legally liable for the **bodily injury**." *Id*. (emphasis in original).

This Court held the policy was ambiguous and the passenger was therefore entitled to benefits. *Id*. at *5-6. In so holding, we reasoned that the declarations page set out a benefit amount, but did not identify any limitations to the underinsured motorist coverage, triggering a higher level of scrutiny in reading the rest of the policy. *Id*. at *5. The limits of liability section contained a second ambiguity, in that it defined the underinsured motorist coverage limit as the difference between the amount of the insured's damages for bodily injury and the amount paid to the insured by a tortfeasor up to the limits of the coverage, which contradicted the definitions section. *Id*.

---

[1] For a more complete history of the case law pertaining to ambiguities in underinsured motorist coverage, see *Simmons*, 2015 WL 5829654 at *2-4 (discussing *Rodriguez*; *Seeck*; *Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132 (Mo. banc 2009); *Jones v. Mid–Century Ins. Co.*, 287 S.W.3d 687 (Mo. banc 2009); and *Miller v. Ho Kun Yun*, 400 S.W.3d 779 (Mo. App. W.D. 2013)).

The circumstances and Policy language were substantially similar here. As in *Simmons*, it is undisputed that the vehicle driven by the tortfeasor, Close, did not meet the criteria for an "underinsured motor vehicle" set out in the Policy's definition section, because his liability policy limit exceeded the amount of underinsured motorist coverage provided by the Policy. However, this does not end the inquiry. The declarations page stated the Policy will provide $50,000 of underinsured motorist coverage per person, without stating any further limitations. As in *Simmons*, this type of language triggers a heightened level of scrutiny, and we read the remainder of the policy for any language that may suggest the coverage is excess. *Id*.

The limits of liability section contained such language. As stated above, that section provided in relevant part:

A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

Notably, this subsection phrased its limits in terms of "all damages" suffered by the insured, "including damages for care, loss of services or death." It also specifically referred the reader back to the declarations page, which as stated above lists a policy limit of $50,000 per person without further limitation. As in *Simmons*, the limits of liability section was therefore phrased with reference to the insured's total uncompensated damages. The above-referenced section is followed by another pertinent part of the limits of liability portion of the Policy, the "set-off" provision in subsection E, which stated:

E. Any amount otherwise payable for damages under this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

6

The preceding language seemingly contradicts that found in subsection A and the declarations page, in that it seeks to set the limit of liability relative to the amount paid by the tortfeasor, rather than relative to the insured's total damages as stated in the other sections. Appellant contends this language negates its liability, but the Supreme Court found similar language created an ambiguity in *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687 (Mo. banc 2009). Using very similar language to that at issue here, the set-off provision in that case provided in relevant part:

> f.  The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by any amount paid or payable to or for an insured person;
>
>> i.  by or for any person or organization who is or may [be] held legally liable for the bodily injury to an insured person.

*Id*. at 690 (emphasis in original). The insurer in *Jones* asserted the preceding language allowed it to reduce its total underinsured motorist payment by the amount paid by the tortfeasor. *Id*. at 691. The Supreme Court disagreed, stating such a construction was in conflict with the unqualified promises to pay elsewhere in the contract which did not reference the set-off subsection. *Id*. at 692. Further, if the insurer was allowed to set-off the tortfeasor's payment, the full amount of the limit of liability would never be paid, as it would always be reduced by the statutory minimum of liability in Missouri. *Id*. at n.3. Such an interpretation would be "inaccurate and misleading." *Id*. at 692. Ultimately, the contract promised coverage in one section and took it away in another, rendering it ambiguous and requiring it to be construed in favor of the insured. *Id*.

We find the reasoning in *Jones* controls the outcome here. The Policy promises to pay $50,000 per person in underinsured motorist coverage without further limitations on the declarations page. The policy then describes its limits of liability in terms of "all damages"

7

suffered by the insured. To adopt Appellant's proposed interpretation of subsection E would contradict these other sections, rendering the contract ambiguous. *See Miller v. Ho Kun Yun*, 400 S.W.3d 779, 792 (Mo. App. W.D. 2013) ("*any contradictory language anywhere*" in a policy renders it ambiguous) (emphasis in original). Further, in this case the tortfeasor's liability limits are greater than the amount of applicable underinsured motorist coverage (e.g., $100,000 liability limit versus $50,000 per person in underinsured motorist coverage). To allow Appellant to reduce its payment by the tortfeasor's payment would limit recovery to $0.00, rendering the underinsured motorist coverage completely illusory under these circumstances, despite the fact the insured paid a separate premium for it. Such a construction is not favored by Missouri law. *Id.* at 791 ("[c]onfusion of the ordinary insurance purchaser of [underinsured motorist] coverage is legislatively recognized in Missouri, in that the Missouri General Assembly has adopted legislation to help protect the insurance consumer from purchasing 'illusory' coverage" (citing section 379.204 RSMo 2000)); *see also Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 271 (Mo. banc 1983) ("[a] construction which may render a portion of the policy illusory should not be indulged in").

Based on the foregoing, the trial court did not err in finding the Policy ambiguous and granting summary judgment in favor of Respondent. Point denied.

### III. CONCLUSION

The trial court's grant of summary judgment in favor of Respondent is affirmed.


_____
ROBERT M. CLAYTON III, Presiding Judge

Kurt S. Odenwald, J., and
James M. Dowd, J., concur.

8